**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| NATIONAL CREDIT UNION, ADMINISTRATION BOARD, as Liquidating Agent of St. Paul Croatian Federal Credit Union, <br><br> Plaintiff, <br><br> v. <br><br> CUMIS INSURANCE SOCIETY, INC., <br><br> Defendant. | CASE NO. 1:11 CV 1739 <br><br><br> MAGISTRATE JUDGE GREG WHITE <br><br> **MEMORANDUM OPINION & ORDER** |

This matter is before the Court upon the Plaintiff National Credit Union Administration Board, acting in its capacity as Liquidating Agent for St. Paul Croatian Federal Credit Union's (1) "Combined Motion for Relief Re:, or, Reconsideration of, Opinion & Order" (Doc. No. 105); and (2) Motion for Leave to Reply to Cumis' Memo in Opposition to Motion for Relief, *Instanter* (Doc. No. 110.) For the following reasons, Plaintiff's Motion for Leave to Reply *Instanter* (Doc. No. 110) is GRANTED, and Plaintiff's Combined Motion for Relief or Reconsideration (Doc. No. 105) is DENIED.

**I.    Background**

On April 18, 2011, Plaintiff filed a Complaint against Defendant CUMIS Insurance Society, seeking a declaratory judgment that CUMIS owes coverage under a fidelity bond it issued to St. Paul for losses arising from employee or director dishonesty. (Doc. No. 1.) After

an extensive discovery period, the parties filed cross motions for summary judgment on October 29, 2014. (Doc. Nos. 88, 90.) Briefs in Opposition were filed on December 5, 2014, and replies were filed on December 22, 2014. (Doc. Nos. 97, 98, 99, 100.)

Of particular relevance herein, the parties each moved for summary judgment in their favor with respect to the fidelity bond's Termination provision.[1] That provision provides, in pertinent part, as follows:

> **9.  Termination Or Limitation Of Coverage For Employee Or Director**
>
> 1. This Bond's coverage for an "employee" or "director" terminates immediately when one of your "directors," officers or supervisory staff not in collusion with such person learns of:
>
>    a. Any dishonest or fraudulent act committed by such "employee" or "director" at any time, whether or not related to your activities or of the type covered under this Bond; or
>
>    b. Any termination of bond coverage for such "employee" or "director" by any bonding company, which coverage was not reinstated.
>
> 2. At our sole option, we may terminate coverage for an "employee" or "director." Such termination will be effective 15 days after receipt by you, and by your state and federal supervisory authority if required by law, of written notice of such termination for us.
>
> 3. Termination of coverage for an "employee" or "director" under paragraphs 1. or 2. above terminates our liability for any loss resulting from any act or omission by that "employee" or "director" occurring after the effective date of such termination.

(Doc. No. 90-2 at 69-70.) CUMIS argued it was entitled to summary judgment in its favor under this provision because Mirjana Zovkic, the "office manager" of St. Paul's Eastlake branch, qualifies as "supervisory staff." It maintained that coverage terminated for St. Paul employee Anthony Raguz[2] no later than April 1, 2008 because, by that date, Ms. Zovkic knew Mr. Raguz

---

[1] The parties also moved for summary judgment on the basis of several additional arguments, none of which are relevant to the instant Motion for Reconsideration.

[2] As detailed in the Court's Opinion & Order, Mr. Raguz was the Chief Operating Officer of St. Paul Federal Croatian Credit Union during the relevant time period. It is undisputed that he engaged in a massive fraudulent scheme at St. Paul that resulted in the collapse of the credit union. *See* Doc. No. 102 at 3-11.

was falsifying loans and loan documents. (Doc. No. 88-1 at 7.) Because the claim was not made until April 2010 when Mr. Raguz was no longer covered by the bond, CUMIS asserted Plaintiff's claim for Mr. Raguz's dishonest acts is not covered.

Plaintiff emphasized that the term "supervisory staff" is not defined in the bond and argued that term should therefore be strictly construed against CUMIS. Citing a definition of the term "supervisor" taken from United States code provisions relating to National Labor Relations, Plaintiff argued Ms. Zovkic did not constitute supervisory staff because deposition testimony reveals she did not manage "staff" and had no supervisory responsibilities. Plaintiff also maintained there is no evidence Ms. Zovkic knew Mr. Raguz had committed any dishonest or fraudulent act prior to liquidation. Finally, Plaintiff asserted that "to the extent Ms. Zovkic is deemed to be 'supervisory staff' and did know of [Mr. Raguz's] dishonest acts, then she was in collusion with him by conducting the transactions that brought about the loss, failing to report the same to the authorities and generally assisting in the continuation of the scheme." (Doc. No. 98 at 25.)

On April 7, 2015, the Court issued a Memorandum Opinion & Order denying the parties' cross motions for summary judgment. (Doc. No. 102.) With respect to the Termination provision, the Court determined the term "supervisory staff" was ambiguous because it was not defined in the bond and was susceptible to more than one reasonable interpretation. *Id*. at 41. The Court then construed the term in favor of St. Paul (i.e., Plaintiff) by using the definition of the term "supervisor" set forth in Plaintiff's summary judgment motion. *Id*. at 42. Reviewing the conflicting deposition testimony regarding the nature and scope of Ms. Zovkic's responsibilities at St. Paul, the Court went on to conclude that a genuine issue of material fact exists regarding whether Ms. Zovkic qualifies as "supervisory staff." *Id*. at 43. The Court further found a genuine issue of material fact exists with respect to whether Ms. Zovkic "learn[ed] of" any "dishonest or fraudulent act" committed by Mr. Raguz. *Id*. at 43-44. Accordingly, the Court found that neither Plaintiff nor CUMIS were entitled to summary judgment in their favor on this issue. *Id.* at 45.

On April 20, 2015, Plaintiff filed a "Combined Motion for Relief Re:, or Reconsideration

3

of, Opinion & Order." (Doc. No. 105.) Defendant timely filed a Brief in Opposition on May 8, 2015. (Doc. No. 109.)

## II.     Legal Standard

A motion for reconsideration is considered a motion to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure. *See Inge v. Rock Fin. Corp.,* 281 F.3d 613, 617-618 (6th Cir. 2002); *Smith v. Hudson*, 600 F.2d 60, 62-63 (6th Cir. 1979); *Kauffman v. Medina County Clerk of Courts*, 2014 WL 1051026 at * 2 (N.D. Ohio March 24, 2014). Such a motion is extraordinary and sparingly granted. *See Cequent Trailer Products, Inc. v. Intradin (Shanghai) Machinery Co., Ltd.,* 2007 WL 1362457 at * 2 (N.D. Ohio May 7, 2007); *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F.Supp. 644, 669 (N.D. Ohio 1995). A court may grant a motion to amend or alter judgment if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *See Heil Co. v. Evanston Ins. Co.*, 690 F.3d 722, 728 (6th Cir. 2012); *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F.Supp. 1182, 1184 (N.D. Ohio 1996). *See also Gascho v. Global Fitness Holdings, LLC*, 918 F.Supp.2d 708, 715 (S.D. Ohio Jan. 16, 2013) ("A motion for reconsideration or to alter or amend is not a vehicle to reargue the case or to present evidence which should have been raised in connection with an earlier motion."); 11 Charles Alan Wright, Arthur Miller and Mary Kay Kane, Federal Practice and Procedure, § 2810.1 (2d ed. 1995) (motions to alter or amend judgment cannot be used to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment.").

Plaintiff herein also seeks relief from the Court's Opinion & Order pursuant to Fed. R. Civ. P. 60. "The standard for granting a Rule 60 motion is significantly higher than the standard applicable to a Rule 59 motion." *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir.

1998). *See also Board of Trustees of Toledo Roofers Local No. 134 Pension Plan v. Enterprise Roofing & Sheet Metal Co.*, 2014 WL 988851 at * 2 (N.D. Ohio March 13, 2014). Rule 60(a) provides, in relevant part, that "[t]he court may correct a clerical mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed.R.Civ.P. 60(a). "Subdivision (a) deals solely with the correction of errors that properly may be described as clerical or arising from oversight or omission. Errors of a more substantial nature are to be corrected by a motion under Rules 59(e) or 60(b)." 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2D § 2854, at 240 (1995). Rule 60(a) "does not ... authorize the court to revisit its legal analysis or otherwise correct an error of substantive judgment." *Pruzinsky v. Gianetti*, 282 F.3d 434, 440 (6th Cir. 2002) (citation omitted).

In contrast, a court may provide relief under Rule 60(b)(1) in instances of "mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1). The Sixth Circuit has explained that a motion for relief under Rule 60(b)(1) is intended to provide relief to a party in only two instances: "(1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000). Therefore, a "claim of legal error in the underlying judgment falls within the definition of mistake under Rule 60(b)(1)." *United States v. Reyes*, 307 F.3d 451, 456 (6th Cir. 2002) (citing *Pierce v. United Mine Workers of Am., Welfare & Ret. Fund for 1950 & 1974*, 770 F.2d 449, 451 (6th Cir. 1985)). *See also Barrier v. Beaver*, 712 F.2d 231, 234-35 (6th Cir. 1983) (allowing a motion for reconsideration to correct a court's mistake of law and recognizing that Rule 60(b)(1) allows for correcting the court's mistakes or errors).

Alternatively, a court may apply Rule 60(b)(6) to provide relief under "any other reason that justifies relief." Fed.R.Civ.P. 60(b)(6). A court's application of Rule 60(b)(6) requires "exceptional and extraordinary circumstances" warranting relief in the absence of an appeal on the merits. *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989). As the Sixth Circuit has explained, Rule 60(b) does not afford litigants a second chance to convince the court to rule in his or her favor by presenting new explanation, new legal theories, or proof.

5

*See Jinks v. Allied Signal, Inc*., 250 F.3d 381, 385 (6th Cir. 2001).

**III.    Analysis**

In its Motion, Plaintiff maintains the Court correctly found the term "supervisory staff" to be ambiguous and construed it in Plaintiff's favor, but erred when it nevertheless went on to find that a genuine issue of material fact exists with respect to whether Ms. Zovkic qualifies as "supervisory staff" under the Termination provision of the bond.  Plaintiff argues that, although it provided a definition of "supervisor" in its motion, it did not actually intend for the Court to use that definition in analyzing this bond provision.  Rather, citing legal principles not previously argued, Plaintiff now asserts that for "'an insurer to defeat coverage through a clause in the insurance contract, it must demonstrate that the clause in the policy is capable of the construction it seeks to give it, and that such construction is the only one that can be fairly placed upon the language.'" *Westfield Ins. Co. etc v. Continental Ins. Co,* 2015 U.S. Dist. Lexis 45437 (N.D. Ohio April 7, 2015) (quoting *LuK Clutch Sys., LLC v. Century Indem. Co.,* 805 F. Supp.2d 370, 376-77 (N.D. Ohio 2011)).  Based on this newly cited authority, Plaintiff maintains that, as a matter of law, CUMIS "cannot prove that its definition, which it never proffered, is the only definition that can be fairly placed on the language, given that the term is ambiguous."  *Id*. at 9.  Thus, Plaintiff asks the Court to reconsider this portion of the Opinion & Order and enter summary judgment in its favor with respect to this argument.

Defendant filed a Brief in Opposition on May 8, 2015.  (Doc. No. 109.)  Therein, Defendant maintains Plaintiff's motion should be denied because "if both [Plaintiff] and CUMIS propose reasonable interpretations of the phrase ["supervisory staff"] and the Court finds that (1) the phrase is ambiguous, and (2) the phrase should be construed against CUMIS, CUMIS still has the ability to show that the facts of the case warrant finding in favor of CUMIS even using the proposed definition of plaintiff."  *Id*. at 2.  Otherwise, Defendant argues, "if plaintiff was correct, once a term in an insurance policy is found to be ambiguous, it is then ignored as if it meant nothing."  *Id.*   Lastly, Defendant argues the *Westfield* case cited by Plaintiff is distinguishable because (1) the term at issue in that case ("occurrence") was not ambiguous; and, (2) there were no fact issues in that particular case that could have precluded coverage.  *Id*. at 3.

6

In its Reply, Plaintiff challenges Defendant's attempt to distinguish *Westfield* and argues that "CUMIS' attempt to deny coverage via the use of an ambiguous term conflicts with Ohio law and is illogical." (Doc. No. 110 at 3.)  It strenuously maintains that, because the Court found the term "supervisory staff" ambiguous and construed it in favor of Plaintiff, summary judgment should have been granted because it is contrary to Ohio law to "maintain the possibility of defining this ambiguous term in such a way that could preclude coverage under the bond." *Id.*

The Court finds Plaintiff has not demonstrated a clear error of law warranting either relief from, or reconsideration of, the denial of summary judgment in its favor with respect to the bond's Termination provision.  In essence, Plaintiff argues that, because the Court found the term "supervisory staff' to be ambiguous and determined it should be construed in Plaintiff's favor, that term is basically stricken from the bond and of no force or effect.  Plaintiff cites no legal authority in support of this assertion, and the Court is not inclined to construe the bond so as to render one of its terms meaningless.  As Ohio courts have explained, "'[i]n construing a written instrument, effect should be given to all of its words if this can be done by any reasonable interpretation; and it is the duty of the court to give effect to all parts of a written contract, if this can be done consistently with the expressed intent of the parties.'" *Mapletown Foods, Inc. v. Motorists Mut. Ins. Co.*, 104 Ohio App.3d 345, 348, 662 N.E.2d 48, 49 (Ohio App. 8th Dist. 1995) (quoting *Ford Motor Co. v. John L. Frazier & Sons Co.*, 8 Ohio App.2d 158, 161, 196 N.E.2d 335, 337 (1964)).  Indeed, it is well-established that "'[i]f possible, every provision of a contract should be held to have been inserted for some purpose and to perform some office.'" *Id*. (quoting 11 Ohio Jurisprudence 2d 399, Contracts, Section 155.)  *See also Urban Associates, Inc. v. Standex Electronics, Inc*., 216 Fed. Appx. 495, 506 (6th Cir. 2007) (noting Ohio's "'fundamental [rule] that a contract should be construed so as to give effect to all its provisions'")(quoting *Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App.3d 170, 517 N.E.2d 559, 564 (Ohio App. 8th Dist. 1986)); *The Andersons, Inc. v. Factory Mutual Ins. Co.*, 2003 WL 25875557 at * 3 (N.D. Ohio Sept. 3, 2003) (interpreting Ohio law, noting that a court "must not interpret [an insurance] contract so as to render any phrase surplusage"); *Budai v. Euclid Spiral Paper Tube Corp.*, 1997 WL 28111 at * 9 (Ohio App. 9th Dist. Jan. 22, 1997)

(stating that "*all* terms in a contract should be given effect whenever possible")(emphasis in original); *Hybud Equip. Co. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 666, 597 N.E.2d 1096, 1102 (Ohio 1992)("'In construing a written instrument, effect should be given to all of its words, if this can be done by any reasonable interpretation.'") (quoting *Wadsworth Coal Co. v. Silver Creek Min. & Ry. Co.*, 40 Ohio St. 559, syllabus para. 1 (1884)).

As noted above, the Court found the term "supervisory staff" to be ambiguous because it was not defined in the bond and was susceptible to more than one reasonable interpretation. (Doc. No. 102 at 41.) The Court acknowledged that this term should be construed in Plaintiff's favor and, therefore, analyzed the relevant evidence in the context of the definition of the term set forth in Plaintiff's own summary judgment motion. The Court then found that, even under Plaintiff's suggested definition, the deposition testimony of Ms. Zovkic and Mr. Raguz created genuine issues of material fact regarding whether Ms. Zovkic constituted "supervisory staff" under the bond. In so doing, the Court recognized and applied two important rules of construction under Ohio law; i.e., the principle that ambiguous terms should be construed in favor of the insured and the "'fundamental [rule] that a contract should be construed so as to give effect to all its provisions.'" *Urban Associates, Inc.*, 216 Fed. Appx. at 506. Thus, the Court finds its analysis does not constitute a substantial or clear error of law.

The decision cited by Plaintiff, *Westfield Ins. Co. etc v. Continental Ins. Co,* 2015 U.S. Dist. Lexis 45437 (N.D. Ohio April 7, 2015), does not require a different result. In that case, the court noted that "the coverage dispute involves purely legal issues;" "[t]he facts are not in dispute;"and, "[t]he parties agree that the matter to be decided is a question of law." *Id*. at * 2, 9. On this basis, the court found "[s]ummary judgment is thus appropriate" and "[t]he court may issue a dispositive judgment on the matter at hand without the need to submit the issue to a jury." *Id*. at * 9. By contrast, the relevant facts in the instant case are strongly disputed. As explained at length in this Court's Memorandum Opinion & Order, the record contains sharply conflicting testimony regarding the nature and scope of Ms. Zovkic's responsibilities at St. Paul. (Doc. No.

8

102 at 39-43.) Thus, the *Westfield* decision is distinguishable.[3]

In sum, while Plaintiff would clearly have preferred a different outcome, it has not demonstrated a clear error of law or otherwise persuaded the Court that reconsideration or relief from judgment is warranted. As explained above, the Court will not construe the bond so as to render the term "supervisory staff" meaningless. In its Reply, Plaintiff suggests that the Court's ruling on this issue improperly allows Defendant to define the term "supervisory staff," arguing "[w]hen has a Court ever allowed an insurer to define its own contractual terms after litigation such that would conceivably result in termination of coverage?" (Doc. No. 110 at 3.) Plaintiff misconstrues the Court's holding. In its Opinion, the Court did not allow Defendant to define the term "supervisory staff" but, rather, used the definition suggested by Plaintiff in its own summary judgment motion.

Moreover, the Court does not intend to allow Defendant to unilaterally define the term "supervisory staff." Rather, as the Court has already explained to counsel, the Court will arrive upon a definition of this term for purposes of trial, which is scheduled to begin on August 25, 2015. As Plaintiff now apparently objects to use of the definition of "supervisor" suggested in its summary judgment motion, the Court directs the parties to attempt to agree upon a definition of the term "supervisory staff." If the parties are unable to agree, they are directed to each submit their own proposed definitions of this term, accompanied by a reasoned explanation and legal support. In addition, and also for purposes of trial, the parties are ordered to submit proposed definitions of the terms "dishonest conduct" and "in collusion" as those terms are used

---

[3] The Court further notes that Plaintiff failed, at any point in its summary judgment briefing, to raise the legal principle for which Plaintiff cites *Westfield*; i.e., that "for an insurer to defeat coverage through a clause in the insurance contract, it must demonstrate that the clause in the policy is capable of the construction it seeks to give it, and that such construction is the only one that can be fairly placed upon the language." *Westfield*, 2015 U.S.Dist. Lexis 454437 at * 14. As noted above, "[i]t is not the function of a motion to reconsider. . . 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" *McConocha*, 930 F.Supp. at 1184. *See also Jinks,* 250 F.3d at 385 (noting that Rule 60(b) does not afford litigants a second chance to convince the court to rule in his or her favor by presenting new explanation, new legal theories, or proof.)

9

in the bond. The parties' submissions regarding these definitions will be due no later than July 1, 2015.

**IV.	Conclusion**

For all the reasons set forth above, Plaintiff's Motion for Relief/Reconsideration (Doc. No. 105) is DENIED. The parties' submissions regarding the proposed definitions of the terms "supervisory staff," "dishonest conduct," and "in collusion" are due no later than July 1, 2015.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: May 13, 2015