**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| NATIONAL CREDIT UNION, ADMINISTRATION BOARD, as Liquidating Agent of St. Paul Croatian Federal Credit Union, | ) ) CASE NO. 1:11 CV 1739 ) ) ) |
| Plaintiff, | ) ) |
| v. | ) MAGISTRATE JUDGE GREG WHITE ) ) **MEMORANDUM OPINION & ORDER** ) |
| CUMIS INSURANCE SOCIETY, INC., | ) ) |
| Defendant. | ) |

This matter is before the Court upon Defendant Cumis Insurance Society's ("Cumis") Motion to Stay Proceedings (Doc. No. 139.)[1] For the following reasons, Cumis' Motion is DENIED.

**I.    Procedural History**

On August 18, 2011, Plaintiff National Credit Union Administration Board, as Liquidating Agent of St. Paul Croatian Federal Credit Union (hereinafter "Plaintiff" or

---

[1] This case is before the Court upon consent of the parties entered November 28, 2011. (Doc. No. 13.)

"Liquidating Agent") filed a Complaint against Cumis. (Doc. No. 1.) Therein, Plaintiff alleges that, on April 30, 2010, the National Credit Union Administration Board placed the St. Paul Croatian Federal Credit Union (hereinafter "St. Paul") into involuntary liquidation due to insolvency and appointed itself the Liquidating Agent pursuant to 12 U.S.C. ¶ 1787(a)(1)(A). *Id*. at ¶ 6. As Liquidating Agent, Plaintiff asserts it "assumed all right, title and interest of St. Paul by operation of law." *Id*. at ¶ 7. The Complaint contains one count, seeking a declaratory judgment that CUMIS owes coverage under a fidelity bond it issued to St. Paul for losses arising from employee or director dishonesty. *Id*. at ¶¶ 8-19, 32-34. CUMIS filed its Answer on October 24, 2011. (Doc. No. 3.)

A case management conference was conducted on November 29, 2011, at which time the Court set a discovery deadline of September 1, 2012 and a dispositive motions deadline of October 1, 2012. (Doc. No. 14.) These deadlines were extended no less than seven times, in large part due to the parties' numerous discovery disputes.[2] Ultimately, the discovery deadline was extended to July 28, 2014 and the dispositive motions deadline was extended to October 29, 2014. *See* Non-Document Order dated April 15, 2014; Doc. No. 71.

During discovery, Cumis propounded discovery requests seeking documents relating to communications between Plaintiff and the FBI and/or IRS regarding St. Paul Federal Croatian Credit Union. A discovery dispute arose between the parties regarding these requests. On July 22, 2013, after discussion with the parties, the Court received, for *in camera* review, a disc from

---

[2] The docket reflects the Court conducted conferences with counsel regarding discovery disputes on nine (9) separate occasions between July 2012 and May 2014. *See* Doc. Nos. 20, 32, 34, 36, 42, 51, 55, 59, 63. In addition, the parties filed three discovery related motions and/or motions to compel. *See* Doc. Nos. 44, 73, 75.

Plaintiff containing documents responsive to Cumis' requests. Several days later, on July 26, 2013, the Court conducted an in-person conference with counsel for the parties, as well as counsel for the United States. During this conference, counsel for the U.S. indicated that none of the *in camera* documents on the disc were responsive to Cumis' discovery requests, as limited by Cumis to the time period prior to April 2010. (Doc. No. 42.) On the basis of this representation, Cumis withdrew its discovery requests relating to communications between Plaintiff and the FBI and/or IRS, and the Court returned the *in camera* disc to counsel for Plaintiff.[3]

Nearly two years later, after the close of discovery and the Court's denial of the parties' cross motions for summary judgment (Doc. No. 102), Cumis asserted in a letter to this Court that "whatever the NCUA learned [from the FBI and/or IRS] in January 2010 is an issue in this case and may impact at least the additional $1 million in coverage obtained in February 2010." *See* Cumis' letter to the Court dated May 21, 2015. Cumis maintained that the United States' representation that the previously submitted *in camera* documents were not relevant "was not accurate," and, therefore, Cumis "renewed" its request for documents relating to "what the NCUA was told by the FBI and/or the IRS in January 2010." *Id*.

Plaintiff strenuously objected to Cumis' letter. Among other things, Plaintiff argued that Cumis' prior discovery requests were specifically propounded to the Plaintiff, which is acting in its capacity as Liquidating Agent rather than in its capacity as Regulatory Agency. Plaintiff maintained that "the Liquidating Agent did not exist until April 30, 2010" and, thus, "it did not participate in any alleged meeting between the [Agency] and the FBI and/or IRS in January

---

[3] The Court did not conduct its own *in camera* review of these documents prior to returning them to Plaintiff's counsel.

2010." *See* Plaintiff's letter to the Court dated June 5, 2015. Moreover, Plaintiff asserted it "does not possess documents reflecting any meeting between the Regulatory Agency and the FBI/IRS, other than what have already been provided to Cumis or which have been published as a matter of public record." *Id.* Accordingly, Plaintiff claimed Cumis' discovery requests were not properly propounded to the Liquidating Agent and Cumis should direct its requests to "one or more of the entities possessing said information via the procedures set forth in the Code of Federal Regulations." *Id*.

On June 18, 2015, the Court conducted a telephonic status conference with counsel. During that conference, Plaintiff agreed to inquire of the non-party National Credit Union Administration, acting in its capacity as Regulatory Agency (hereinafter "Regulatory Agency" or "NCUA") "as to whether the NCUA has documents reflecting or relating to communications between the NCUA and the FBI and/or IRS between January and April 2010 regarding St. Paul Croatian Federal Credit Union." (Doc. No. 112.) On June 25, 2015, Plaintiff advised the Court that "subsequent to a reasonable inquiry of the information known or readily obtainable to it, non-party, the National Credit Union Administration, has determined that no documents either received by or and/or sent to the NCUA from/to the FBI and/or IRS such that would respond to CUMIS' request for information regarding the purported January meeting either exist or are available." *See* Plaintiff's letter to the Court dated June 25, 2015. Cumis objected, arguing Plaintiff had failed to comply with the Court's Order because it did not inquire whether the NCUA has documents "reflecting or relating to communications between the NCUA and the FBI and/or IRS [regarding St. Paul] between January and April 2010." *See* Cumis' letter to the Court dated June 29, 2015.

4

On June 30, 2015, the Court conducted a telephonic status conference with counsel for the parties, as well as counsel for the Regulatory Agency. As reflected in a Minute Order issued that date, the Court ordered the following:

> As discussed during the conference, counsel for the NCUA will determine, in accordance with this Court's Minute Order dated June 18, 2015, whether the NCUA has documents reflecting or relating to communications between the NCUA and the FBI and/or IRS between January and April 2010 regarding St. Paul Croatian Federal Credit Union. On or before Monday, July 20, 2015, counsel for the NCUA will provide such documents to the Court for *in camera* review subject to a proposed protective order. At that time, counsel for the NCUA may raise written objections to the release of such documents.

(Doc. No. 114 at 1.)

Counsel for the Regulatory Agency thereafter delivered a set of original, unredacted documents to the Court for *in camera* review, along with a Privilege Log and an *ex parte* brief arguing the documents should not be produced because they are not relevant and are subject to the deliberative process, attorney client, and/or work product privileges.

On August 13, 2015, the Court issued a Memorandum Opinion & Order, in which it found that certain documents from the Regulatory Agency's *in camera* production should be produced to the parties in redacted form subject to the Stipulated Protective Order previously entered in this matter. (Doc. No. 124.) The Regulatory Agency subsequently agreed to allow Cumis to conduct a limited deposition of one of the individuals named in these documents; i.e., retired NCUA supervisory examiner Dale Turner.

After conducting that deposition, Cumis filed a Motion to Reopen Discovery. (Doc. No. 127.) Therein, Cumis asked the Court to reopen discovery for forty-five (45) days in order to allow it to determine if any member of St. Paul's Board of Directors or Supervisory Committee, or any supervisory staff employee, "provided information to the FBI or IRS during their

investigation of St. Paul which shows that a member of the Board, Supervisory Committee, or supervisory staff knew prior to February 11, 2010, that Anthony Raguz ('Raguz') was dishonest." (Doc. No. 127-1 at 2.) Cumis asserted that, "[i]f so, coverage terminated for Raguz prior to the inception of the February 11, 2010 policy on which the plaintiff has sued." *Id*. Moreover, Cumis argued that "any such knowledge may also trigger discovery and the concomitant notice and limitations periods in the bond which, if not met, could also negate coverage." *Id*. Plaintiff filed a Brief in Opposition on October 1, 2015. (Doc. No. 131.)

Prior to ruling on the motion, the Court asked the Regulatory Agency to determine "whether it has any records from the 2009 calendar year that indicate a [St. Paul] Board Member, Supervisory Committee member, or supervisory staff member had knowledge that Anthony Raguz had committed a dishonest or fraudulent act." (Doc. No. 128.) In a letter dated October 9, 2015, counsel for the Agency advised the parties that the Agency had conducted a thorough search of its records and determined it had no records meeting this description. (Doc. No. 133.)

Thereafter, during a status conference on October 15, 2015, Cumis advised the Court that it had recently served *Touhy* requests on the FBI and the IRS for deposition testimony regarding (1) information received from any member of the St. Paul Board or Supervisory Committee, or employee of St. Paul, regarding possible dishonest and/or fraudulent activity at St. Paul; (2) information received from members of St. Paul about loans they did not receive or possible dishonest and/or fraudulent activity at St. Paul; and, (3) information received from or provided to the Agency regarding possible dishonest and/or fraudulent activity at St. Paul. Cumis further reported that its *Touhy* requests were denied via letter dated October 13, 2015. (Doc. No. 133 at 2.)

On October 19, 2015, this Court issued a Memorandum Opinion & Order denying Cumis' Motion to Reopen Discovery. (Doc. No. 135.) Therein, the Court noted as follows:

> * * * Defendant has already obtained discovery from both Plaintiff and the Agency regarding FBI and/or IRS communications relating to St. Paul. While Defendant may wish to appeal the denial of his *Touhy* requests to the FBI and IRS, the Court finds any such appeal to be distinct from the instant case and not a basis to re-open discovery herein. The discovery deadline in this matter was extended seven times over the course of this litigation. (Doc. Nos. 20, 51, 55; and, Non-document Orders dated December 21, 2012, May 7, 2013, July 18, 2013, and April 15, 2014.) With trial now less than two months away, the Court will not reopen discovery to allow Defendant to continue to pursue this line of inquiry, particularly where it has already received responsive documents on the very same topic from both Plaintiff and the Agency.

(Doc. No. 135 at 4.)

On October 26, 2015, Cumis filed the instant Motion to Stay Proceedings. (Doc. No. 139.)

**II.**     **Legal Standard**

As the Sixth Circuit has explained, "'[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court.'" *Federal Trade Commission v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014) (quoting *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)).

A stay of civil proceedings due to a pending criminal investigation "is an extraordinary remedy." *Id. See also Pullen v. Howard*, 2015 WL 145091 at * 2 (S.D. Ohio Jan. 12, 2015); *Chao v. Fleming*, 498 F.Supp.2d 1034, 1037 (W.D. Mich. 2007); *McCullaugh v. Krendick*, 2009 WL 2929306 at * 1 (N.D. Ohio Sept. 9, 2009). Indeed, it is well-established that "'nothing in the

Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment,' *Chao v. Fleming*, 498 F. Supp.2d 1034, 1037 (W.D. Mich. 2007), and 'there is no requirement that a civil proceeding be stayed pending the outcome of criminal proceedings,' *S.E.C. v. Novaferon Labs, Inc.*, No. 91-3102, 941 F.2d 1210, 1991 WL 158757, at * 2 (6th Cir. Aug. 14, 1991)." *E.M.A. Nationwide, Inc.*, 767 F.3d at 627. Thus, district courts have "broad discretion" in determining whether to stay a civil action while a criminal action is pending. *Id. See also Chao*, 498 F.Supp.2d at 1037; *McCloskey v. White*, 2011 WL 780793 at * 1 (N.D. Ohio March 1, 2011); *McCullaugh*, 2009 WL 2929306 at * 1; *Baird v. Daniels*, 2013 WL 493236 at * 1 (S.D. Ohio Feb. 7, 2013).

Generally, in evaluating whether to stay a civil action while a criminal action is pending, courts consider and balance the following factors:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*E.M.A. Nationwide, Inc.*, 767 F.3d at 627. In addition to these factors, district courts "should consider 'the extent to which the defendant's fifth amendment rights are implicated.'" *Id.* (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995)). The most important factor is the balance of the hardships, but "'[t]he district court must also consider whether granting the stay will further the interest in economical use of judicial time and resources.'" *Id.* (quoting *Int'l Bhd. of Elec. Workers v. AT & T Network Sys.*, 879 F.2d 864, 1989 WL 78212, at *8 (6th Cir. July 17, 1989)).

Ultimately, the burden is on the party seeking the stay to show there is "pressing need for

8

delay, and that neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council*, 565 F.2d at 396. *See also E.M.A. Nationwide, Inc.*, 767 F.3d at 627; *Pullen*, 2015 WL 145091 at * 2.

**III.     Analysis**

In its Motion, Cumis asks the Court to stay in the instant proceedings "until the criminal investigation related to St. Paul Croatian Federal Credit Union is concluded." (Doc. No. 139 at 1.) Cumis states it "wishes to depose FBI Special Agent Sloan and IRS Special Agent Thatcher because both agents participated in a criminal investigation related to [St. Paul] under the supervision of the [DOJ], and, therefore, possess information relevant to the discovery, termination, and estoppel issues in this case." *Id*. at 2. Cumis asserts that, in denying Cumis' *Touhy* requests for these depositions, the DOJ "did not deny such information existed; instead it refused Cumis the right to depose the agents invoking a panoply of privileges some of which may not be applicable, but all of which would be severely undercut when the pending criminal investigation ends." *Id*. Cumis argues it would be "severely prejudiced by proceeding without the currently inaccessible important information it seeks from the federal government and plaintiff will only be minimally inconvenienced by a stay." *Id*. at 1.

For the following reasons, the Court finds a stay is not warranted. The basis for Cumis' motion is its belief that the federal criminal investigation of St. Paul may have uncovered information that a St. Paul Board member, Supervisory Committee member, or supervisory staff member had knowledge of possible dishonest and/or fraudulent activity at St. Paul. However, as detailed above and in this Court's Opinion denying Cumis' Motion to Reopen Discovery, Cumis has already obtained discovery from both Plaintiff and the Regulatory Agency regarding FBI

9

and/or IRS communications relating to St. Paul. Indeed, the record reflects Cumis deposed numerous former St. Paul board members, supervisory committee members, and/or employees, during which it had the opportunity to ask (and often did ask) about FBI/IRS communications. Moreover, the non-party Regulatory Agency thoroughly searched its files (on two separate occasions); produced information relating to this issue from the time period 2009 and January through April 2010 for *in camera* review; and, allowed a limited deposition of one of its former supervisory examiners.

Despite the above, Cumis insists a stay is necessary because "the federal government is preventing Cumis from obtaining critical information." (Doc. No. 139 at 1.) Cumis' insistence that this matter should be stayed in order to further pursue this line of inquiry, however, is supported by nothing more than speculation that it can somehow obtain additional information from the FBI and/or IRS that it has not already obtained from Plaintiff and/or the Regulatory Agency. In short, Cumis has not demonstrated that staying this matter until the conclusion of federal criminal proceedings relating to St. Paul would result in the discovery of relevant information that it has not already had the ability to obtain.

Moreover, Cumis has not persuaded the Court that the balance of hardships weighs in favor of a stay. The Court is not convinced that Cumis will be "severely prejudiced" by allowing this matter to proceed, particularly in light of the extensive discovery it has already obtained from Plaintiff and the Regulatory Agency regarding this issue. Plaintiff, on the other hand, would undoubtedly be prejudiced by an indefinite stay of the instant proceedings. The Complaint in this matter was filed over four years ago. Given the extensive discovery and briefing conducted in this case, the Court can only imagine the time, effort, and resources that Plaintiff has expended in

its efforts to resolve the issue of coverage under the fidelity bond at issue. The Court finds that imposing an indefinite stay, particularly so late in the litigation, would prejudice Plaintiff's interest in a swift resolution of its claims.

Similarly, the Court finds that granting an indefinite stay would not further the Court's interest in effective management of its docket. While Cumis maintains that "it is in the interest of the Court that all relevant information is before it when it makes it decision," Cumis has failed to convince the Court that the discovery it has already obtained is inadequate. To the contrary, the Court notes it has been extremely generous in allowing the parties to pursue all necessary discovery in this case. Indeed, the Court extended the deadlines on seven occasions for that very purpose. Moreover, the Court assisted Cumis in obtaining discovery from the non-party Regulatory Agency, even after the discovery deadline in this matter passed. Thus, Cumis' argument that a stay is necessary to ensure that the Court has "all relevant information before it" is without merit.

Finally, Cumis has not demonstrated it would be an economical use of judicial time and resources to stay the instant case. As noted above, this matter has been pending for over four years and has involved a significant expenditure of judicial resources. Cumis has not sufficiently articulated why it could not have sought a stay earlier, nor has it persuaded the Court that a stay would benefit either the Court's or the public's interest.

Accordingly, and for all the reasons set forth above, Cumis' Motion to Stay Proceedings (Doc. No. 139) is without merit and denied.

**IV.** **Conclusion**

For all the foregoing reasons, Defendant Cumis Insurance Society's Motion to Stay

11

Proceedings (Doc. No. 139) is DENIED.

    IT IS SO ORDERED.

                                      /s/ Greg White
                                      U.S. Magistrate Judge

Date: October 27, 2015