**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| NATIONAL CREDIT UNION, ADMINISTRATION BOARD, as Liquidating Agent of St. Paul Croatian Federal Credit Union, | CASE NO. 1:11 CV 1739 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GREG WHITE |
| | **MEMORANDUM OPINION & ORDER** |
| CUMIS INSURANCE SOCIETY, INC., | |
| Defendant. | |

This matter is before the Court upon Defendant Cumis Insurance Society, Inc.'s ("Cumis") Motion *in Limine* Concerning Elizabeth Martin (Doc. No. 136.)[1] For the following reasons, Cumis' Motion is DENIED.

I. **Procedural History**

On August 18, 2011, Plaintiff National Credit Union Administration Board, as Liquidating Agent of St. Paul Croatian Federal Credit Union (hereinafter "Plaintiff" or "Liquidating Agent") filed a Complaint against Cumis. (Doc. No. 1.) Therein, Plaintiff alleges that, on April 30, 2010, the National Credit Union Administration Board placed the St. Paul Croatian Federal Credit Union (hereinafter "St. Paul") into involuntary liquidation due to

---

[1] This case is before the Court upon consent of the parties entered November 28, 2011. (Doc. No. 13.)

insolvency and appointed itself the Liquidating Agent pursuant to 12 U.S.C. ¶ 1787(a)(1)(A). *Id*. at ¶ 6. As Liquidating Agent, Plaintiff asserts it "assumed all right, title and interest of St. Paul by operation of law." *Id*. at ¶ 7. The Complaint contains one count, seeking a declaratory judgment that CUMIS owes coverage under a fidelity bond it issued to St. Paul for losses arising from employee or director dishonesty. *Id*. at ¶¶ 8-19, 32-34. Cumis filed its Answer on October 24, 2011. (Doc. No. 3.)

A case management conference was conducted on November 29, 2011, at which time the Court set a discovery deadline of September 1, 2012 and a dispositive motions deadline of October 1, 2012. (Doc. No. 14.) These deadlines were extended seven times, in large part due to the parties' numerous discovery disputes. Ultimately, the discovery deadline was extended to July 28, 2014 and the dispositive motions deadline was extended to October 29, 2014. *See* Non-Document Order dated April 15, 2014; Doc. No. 71.

In April 2012, as part of its First Set of Interrogatories, Cumis requested that Plaintiff identify "each person you intend to call as a witness at trial, the substance of the expected testimony and your relationship, if any, to each witness." (Doc. No. 138-1 at 4.) Plaintiff did not identify Elizabeth Martin at that time.

Two years later, in March 2014, Cumis noticed the deposition of Plaintiff's Corporate Designee Pursuant to Fed. R. Civ. P. 30(b)(6). (Doc. No. 88-9 at 2.) Among other things, the Notice of Deposition requested Plaintiff produce a witness to testify regarding "the loans on which the complaint is based" and "the damages plaintiff seeks."[2] *Id*. On March 20, 2014,

---

[2] The Notice also requested Plaintiff's 30(b)(6) witness be able to testify about paragraphs 10, 11, 12, 15, and 18 of the Complaint. (Doc. No. 88-9.) These paragraphs allege that: (1) "The liquidation of St. Paul was due to insolvency resulting, in whole or in large part,

2

Plaintiff produced Jennifer Murphy as its Rule 30(b)(6) witness. (Doc. No. 84-1.) As discussed in more detail below, the parties sharply disagree as to whether Ms. Murphy provided responsive testimony regarding the topics listed in the Notice of Deposition.

Several months later, in October 2014, the parties filed cross-motions for summary judgment. (Doc. Nos. 88, 90.) In its motion, Cumis argued (among other things) that it was entitled to summary judgment in its favor because Plaintiff had failed to demonstrate that the loss for which it is seeking coverage under the bond resulted directly from the dishonest conduct of St. Paul Chief Operating Officer Anthony Raguz.[3] (Doc. No. 88.) Cumis noted that the bond provides that: "[w]e will pay you for your loss resulting directly from dishonest acts committed

---

from employee dishonesty leading to losses in excess of $72 million and triggering coverage under Cumis' bond. *See* Criminal Indictment of Anthony Raguz in a criminal case entitled *United States of America v. Nikolovski*, Case No. 1:11-cr-00008-CAB-3, pending in the United States District Court for the Northern District, Eastern Division, Judge Christopher Boyko presiding." (Doc. No. 1 at ¶ 10); (2) "In the spring of 2010, the NCUA discovered what appeared to be a fraudulent lending scheme perpetrated by Anthony Raguz, which was later confirmed by a forensic report prepared by Lillie & Company, Inc., dated October 2, 2010." (Id. at ¶ 11); (3) "On April 12, 2010, St. Paul placed Cumis on notice of the scheme and its intent to pursue a claim under the bond." (*Id*. at ¶ 12); (4) "On October 8, 2010, the NCUA filed a Proof of Loss with Cumis, in the amount of $72,546,823.72." (*Id.* at ¶ 15); and, (5) "The Liquidating Agent timely asserted the claims under the Cumis bond." (*Id*. at ¶ 18.)

[3] As detailed at length in the Court's Memorandum Opinion & Order denying the parties' cross motions for summary judgment (Doc. No. 102), Anthony Raguz became the Chief Operating Officer of St. Paul in 1996. At some point in 2000, Mr. Raguz began making fraudulent loans; i.e., accepting bribes in exchange for loans. (Doc. No. 102 at 4.) It is undisputed that Mr. Raguz's fraudulent conduct continued from 2000 up until the collapse of St. Paul in April 2010. *Id*. at 6. In March 2011, Mr. Raguz was indicted on one count of bank fraud in violation of 18 U.S.C. § 1344; four counts of money laundering in violation of 18 U.S.C. § 1957; and, one count of receipt of commissions or gifts for procuring loans in violation of 18 U.S.C. § 215(a)(2), in connection with his role in the failure of St. Paul Croatian Federal Credit Union. *See United States v. Raguz*, Case No. 1:11CR0008 (N.D. Ohio) (Doc. No. 17.) He pled guilty to all charges on September 27, 2011. *Id*. at Doc. No. 96, 100. On November 27, 2012, Raguz was sentenced to 168 months incarceration and ordered to pay $71,501,823.72 in restitution. *Id*. at Doc. No. 176.

by an 'employee' or 'director, acting alone or in collusion with others." (Doc. No. 90-2 at 20) (emphasis added). Cumis maintained that Ms. Murphy was unable in deposition to tie any losses directly to Mr. Raguz's dishonest conduct, emphasizing her testimony that neither she nor anyone in her department had prepared a list of loans on which Plaintiff's bond claim is based.

On April 7, 2015, the Court issued a Memorandum Opinion & Order, denying the parties' summary judgment motions. (Doc. No. 102.) Therein, the Court rejected Cumis' causation argument, noting that "[w]hile Plaintiff will of course be required to demonstrate the *amount* of its loss at trial, the Court is unable to say, given the wealth of evidence regarding Mr. Raguz's dishonest conduct, that Cumis is entitled to judgment in its favor on the basis that Plaintiff has failed in its burden to demonstrate a covered loss under the bond." *Id*. at 56-57 (emphasis in original).

On April 24, 2015 (nearly nine months after the close of discovery), Plaintiff supplemented its Answers to Cumis' First Set of Interrogatories to identify Elizabeth Martin as a trial witness. (Doc. No. 138-1 at 4.) In its supplement, Plaintiff identified Ms. Martin as a "liquidation analyst" and stated that she "is expected to verify the documentary evidence and the amount of damages." *Id.* Thereafter, Plaintiff's counsel emailed defense counsel on several occasions, offering to make Ms. Martin available for deposition. (Doc. No. 138-2.) It appears Cumis did not take Plaintiff up on its offer, or otherwise attempt to schedule Ms. Martin's deposition.

On July 14, 2015, the Court issued an Order scheduling the matter for bench trial on August 5, 2015. (Doc. No. 118.) As has been detailed in other Orders recently issued by this Court (Doc. Nos. 124, 135, 141), Cumis subsequently sought to conduct (and did, in fact,

conduct) additional discovery regarding various issues not relevant to the instant motion. As a result, the Court rescheduled trial for December 1, 2015. (Doc. No. 129.)

On October 20, 2015, Cumis filed the instant Motion *in Limine* to exclude the testimony of Elizabeth Martin. (Doc. No. 136.) Plaintiff filed a Brief in Opposition on October 26, 2015. (Doc. No. 138.)

**II.     Discussion**

In its Motion, Cumis argues Elizabeth Martin should be barred from testifying at trial for two reasons. First, Cumis maintains Plaintiff failed to timely identify her as a trial witness "as she was disclosed nearly nine months after discovery closed and nearly three years after this litigation commenced." (Doc. No. 136 at 1.) Second, Cumis argues that Plaintiff "cannot substitute Ms. Martin's testimony for the non-responsive testimony of Jennifer Murphy, its previously provided corporate designee pursuant to Rule 30(b)(6)." *Id*. The Court will address each of these arguments in turn.

**A.     Alleged Failure to Timely Identify Ms. Martin as a Trial Witness**

Cumis asserts Plaintiff failed to timely supplement its discovery responses to identify Ms. Martin as a trial witness. It maintains "plaintiff cannot show that its failure to identify Ms. Martin as a witness was substantially justified or harmless and a sanction pursuant to Rule 37(c)(1), therefore is appropriate." (Doc. No. 136-1 at 3.) Cumis claims it had "no knowledge that Ms. Martin was a potential witness, and allowing her to testify would strongly prejudice Cumis at trial." *Id.*

Plaintiff argues it did not fail to timely disclose Ms. Martin as a trial witness. It maintains Ms. Martin "did not become a federal employee until the Fall of 2013" and argues

5

that, "[d]uring her employment, Ms. Martin's role and responsibilities evolved." (Doc. No. 138 at 3.) Plaintiff's counsel states he "disclosed Ms. Martin as a witness in this case within 24 hours of learning her new roles and responsibilities" and, therefore, the disclosure was timely. *Id*. Plaintiff further argues that, even assuming it failed to timely disclose Ms. Martin as a witness, any such failure was "both harmless and not prejudicial." *Id*. at 4. In this regard, Plaintiff notes Ms. Martin was disclosed to Cumis as a witness more than seven months before trial. Plaintiff emphasizes that it repeatedly offered Cumis the opportunity to depose Ms. Martin but Cumis declined to do so, deciding instead to file a motion *in limine* "in order to create an issue in dispute." *Id.*

Fed. R. Civ. P. 26(e) provides that:

**(e) Supplementing Disclosures and Responses**.

(1) *In General*. A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) as ordered by the court.

Fed. R. Civ. Pr. 26(e). As a means of enforcement, Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

As the Sixth Circuit recently explained, "[a] non-compliant party may avoid sanction [under Rule 37(c)] if 'there is a reasonable explanation of why Rule 26 was not complied with or

6

the mistake was harmless.'" *Howe v. City of Akron*, 801 F.3d 718 (6th Cir. Sept. 17, 2015) (quoting *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp*., 596 F.3d 357, 370 (6th Cir. 2010)). In order to assess whether a party's omitted or late disclosure is "substantially justified" or "harmless," a court should consider the following five factors: "'(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.'" *Id*. (quoting *Russell v. Absolute Collection Servs., Inc*., 763 F.3d 385, 396–97 (4th Cir. 2014) and *S. States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)).

Even assuming Ms. Martin was not timely disclosed, the Court finds any such error to be harmless. As noted above, Ms. Martin was identified as a trial witness in April 2015, more than seven months before the December 1, 2015 bench trial in this matter. Plaintiff repeatedly offered to make Ms. Martin available for deposition prior to trial but, for whatever reason, Cumis chose not to depose her. Although Plaintiff's disclosure of Ms. Martin was undoubtedly a surprise, it was not an eve of trial surprise nor was it one that Cumis was unable to cure. Indeed, Cumis offers no reason why it could not have "cured the surprise" by deposing Ms. Martin at some point during the last six months.[4] The fact that it chose not to do so does not compel the conclusion that Ms. Martin should be barred from testifying, particularly since Plaintiff has

---

[4] As Plaintiff correctly notes, during this same time period, Cumis served multiple *Touhy* requests on the non-party National Credit Union Association, in its capacity as Regulatory Agency (hereinafter "Agency"); the FBI; and, the IRS. Moreover, Cumis took the deposition of former Agency supervisory examiner Dale Turner. Cumis does not explain why it was willing to pursue these lines of inquiry after the close of discovery but not willing to take the deposition of Ms. Martin, as offered by Plaintiff.

offered a plausible explanation for her disclosure after the close of discovery. Moreover, the Court does not anticipate that allowing Ms. Martin to testify will disrupt the trial and, indeed, Cumis makes no argument to that effect.

Accordingly, and having considered the factors set forth in *Howe*, the Court finds that, even if Plaintiff failed to timely supplement its discovery responses to identify Ms. Martin as a witness, any such failure is harmless. Therefore, the Court denies Cumis' argument that Ms. Martin's testimony should be barred under Rule 37(c)(1).

### B. Alleged Failure of Jennifer Murphy to Provide Responsive Testimony during the Rule 30(b)(6) Deposition

Cumis argues that the testimony of Plaintiff's 30(b)(6) witness, Jennifer Murphy, was non-responsive to the topics listed in the Notice of 30(b)(6) Deposition. By way of example, Cumis quotes excerpts from Ms. Murphy's testimony wherein she stated that she (1) never prepared or saw a list of the loans on which the claim to Cumis is based; (2) could not name a particular loan at issue in the case; and, (3) did not know how much of the loss was caused by Mr. Raguz as opposed to fraud by the borrowers. (Doc. No. 136-1 at 5-6.) Cumis asserts Plaintiff is now bound by Ms. Murphy's allegedly non-responsive testimony and cannot call a more responsive witness (i.e., Ms. Martin) to testify about these issues at trial.

In response, Plaintiff states that it "is not substituting Ms. Martin for Ms. Murphy" and its "Rule 30(b)(6) witness remains Ms. Murphy." (Doc. No. 138 at 6.) Plaintiff "agrees that it may be bound by" Ms. Murphy's testimony but argues her testimony "does not unequivocally bind [Plaintiff] to the exclusion of other evidence that may explain or explore that testimony." *Id*. at 6-7. Rather, Plaintiff maintains it is permitted to call Ms. Martin to testify in addition to Ms. Murphy and "Cumis is free to attempt to impeach or contradict Ms. Murphy's trial

testimony with her prior deposition." *Id.* at 8. Finally, Plaintiff argues Ms. Murphy was, in fact, responsive during her 30(b)(6) deposition and did not evade any of Cumis' questions. Plaintiff explains it is not surprising that Ms. Murphy was "unable to recall a specific loan number of the hundreds occurring over a decade of time," and argues she was denied the opportunity to "refresh her memory" with the 28 volume forensic accounting report prepared by Lillie & Co. *Id*. at 9, 13.

Under Rule 30(b)(6), a party may depose a public or private corporation, partnership, association, governmental agency or other entity by issuing a notice or subpoena that "describe[s] with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The recipient of the notice "must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." *Id*. The designee must be knowledgeable about the subjects described in the notice, and the recipient of the notice must prepare that witness to testify not just to his or her own knowledge, but the organization's knowledge. *Prosonic Corp. v. Stafford*, 2008 WL 2323528 at * 1 (S.D. Ohio June 2, 2008). In addition, the party seeking the Rule 30(b)(6) deposition "must designate the areas of inquiry with reasonable particularity, and the [recipient of the notice] must designate and adequately prepare the witness to address those matters." *Id*. (quoting *Starlight Intern. Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999).

Although the testimony of a Rule 30(b)(6) designee may be binding on the party proffering it, courts have stated that such testimony "is not tantamount to a judicial admission and does not unequivocally bind the corporation to the exclusion of other evidence that may

9

explain or explore that testimony." *Little Hocking Water Ass'n, Inc. v. E.I. Du Pont de Nemours & Co.*, 2013 WL 1791083 at *11 (S .D. Ohio April 26, 2013 ) (internal quotations omitted). *See also Zino v. Whirlpool Corp.*, 2014 WL 4699652 at * 1 (N.D. Ohio Sept. 19, 2014); *Dow Corning Corp. v. Weather Shield Mfg., Inc*., 2011 WL 4506167 at * 6 (E.D. Mich. Sept. 29, 2011); *Whitesell Corp. v. Whirlpool Corp*., 2009 WL 3672751 at * 1 (W.D. Mich. Oct. 30, 2009). Rather, courts within this district have found that "to the extent evidence . . . offered at trial merely clarifies and updates the testimony and exhibits offered during the 30(b)(6) deposition, no rule of evidence or civil procedure requires its exclusion on that basis alone." *Whitesell*, 2009 WL 3672751 at *1. *See also Dow Corning Corp*., 2011 WL 4506167 at *5.

Cumis maintains, however, that "when a party first provides a non-responsive 30(b)(6) deponent and later tries to call a more-responsive witness at trial . . . courts have excluded the witness." *Ruth v. A.O. Smith Corp*., 2006 WL 530388 at * 10 (N.D. Ohio Feb. 27, 2006). Thus, Cumis argues that, because Ms. Murphy was "total[ly] [unable] to testify as to the issues for which she was designated," Plaintiff is now precluded from calling Ms. Martin to testify at trial regarding the same issues. (Doc. No. 136-1 at 3, fn 3.)

The Court disagrees with Cumis' characterization of Ms. Murphy's 30(b)(6) testimony. While it is true Ms. Murphy was not able to rattle off a list of specific loans during her deposition, she did testify that the amount of the loss was in excess of $72 million and that this figure was based on the findings contained in the Proof of Loss and the 28-volume Lillie & Co. forensic accounting report dated October 2010. (Doc. No. 84-1 at Tr. 51, 75, 88.) Ms. Murphy also testified that, in preparing to testify about the loans that form the basis of Plaintiff's claim, she "looked at the attachments to the Lillie report." (Doc. No. 84-1 at Tr. 75.) As Plaintiff notes,

counsel for Cumis did not bring the Lillie Report attachments to Ms. Murphy's deposition and, thus, she was unable at that time to testify in any greater detail regarding the content of those attachments and how they related to the topics listed in the Notice of 30(b)(6) deposition. (Doc. No. 84-1 at Tr. 70.)

Under these circumstances, the Court is not inclined to bar Ms. Martin from testifying at trial on the basis that Ms. Murphy's testimony was non-responsive. Of course, to the extent Plaintiff's damages evidence at trial contradicts the testimony offered during the Rule 30(b)(6) deposition, Cumis can use that deposition testimony for impeachment purposes. However, to the extent evidence offered at trial merely clarifies and updates the testimony offered during the Rule 30(b)(6) deposition, "no rule of evidence or civil procedure requires its exclusion on that basis alone." *Dow Corning*, 2011 WL 4506167 at * 5.

Accordingly, the Court rejects Cumis' argument that Ms. Martin should be barred from testifying at trial on the grounds that Ms. Murphy's 30(b)6) testimony was non-responsive.

### III.     Conclusion

Accordingly, and for all the reasons set forth above, Cumis' Motion *in Limine* Concerning Elizabeth Martin (Doc. No. 136) is DENIED.

IT IS SO ORDERED.


/s/ Greg White
U.S. Magistrate Judge

Date:   October 30, 2015